IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THOMAS E. JONES, ) | CASE NO. 1:10CV02568 |
| ) | |
| Plaintiff, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | KATHLEEN B. BURKE |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

Plaintiff Thomas E. Jones ("Jones") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act), 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

The December 22, 2009 decision of the Administrative Law Judge[1] (the "ALJ") denied Jones's claim at step two of the established five-step sequential evaluation process for determining whether a claimant is disabled. Tr. 11. Step two of the sequential evaluation – determining whether a claimant has a severe impairment – has been construed as a *de minimis* hurdle for a claimant to meet. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1985). Determinations at step two are considered "exceptional" and are reserved for claims that are "totally groundless" from a medical standpoint. *Higgs,* 880 F.2d at 863.

---

[1] The Administrative Law Judge in this case is Kendra S. Kleber.

1

As set forth below, in reaching her decision, the ALJ failed to follow the Commissioner's own rules and regulations relating to the consideration and evaluation of medical opinions. This failure "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified." *Cole v. Comm'r of Soc Sec.*, No. 09-4309, 2011 U.S. App. LEXIS 19392 *10 (6th Cir. September 22, 2011) (internal quotations omitted). (citing *Blakely v. Comm'r of Soc Sec*, 581 F.3d 399, 407 (6th Cir. 2009)). Accordingly, it is recommended that the Commissioner's decision be REVERSED and that this matter be REMANDED for further proceedings consistent with this Report and Recommendation.

## I. Summary of the Parties' Arguments

### A. Summary of Plaintiff's Argument

The Plaintiff asserts that the ALJ committed error because her decision that Plaintiff did not have a severe impairment is not supported by substantial evidence. Pl's Brief 5-6. Plaintiff asserts that the ALJ erred in her evaluation of the opinions of the treating physician, consultative examiner and the reviewing State agency physicians. Pl's Brief 1. Further, Plaintiff states that the treating physician, consultative examiner and the reviewing State agency physicians all found limitations consistent with a severe impairment, and there is no substantial evidence to the contrary. Pl's Brief 1. Plaintiff also asserts that that he is obese and the ALJ failed to properly evaluate this impairment Pl's Brief 8-9.

Plaintiff is requesting that this Court remand the case so that the alleged errors can be corrected. Pl's Brief 9.

### B. Summary of Defendant's Argument

The Defendant asserts that there is substantial evidence to support the ALJ's finding at step two that Plaintiff had no severe impairments during the relevant time. Def's Brief 6.

2

Defendant argues that "Plaintiff's lack of treatment for any impairment and his vigorous daily activities through the relevant period completely undermine his claims." Def's Brief 6.

Defendant is requesting that this Court affirm the denial of benefits. Def's Brief 9.

## II. Procedural History

Jones filed applications for DIB and SSI on September 17, 2007 alleging a disability onset date of June 1, 1999 due to back, neck and shoulder pain. Tr. 22, 94-105, 115, 141. The state agency denied Jones' claims initially in October 2007 (Tr. 59-64) and upon reconsideration in March 2008. Tr. 67-71. In March 2008, Jones requested a hearing (Tr.72) and, on December 18, 2009, a hearing was held before the ALJ. Tr. 6-52. In its decision dated December 22, 2009, the ALJ determined that Jones was not disabled. Tr. 14. Jones requested review of this decision by the Appeals Council on February 22, 2010. Tr. 4-5. The Appeals Council denied review on September 10, 2010, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3.

On November 9, 2010, Jones filed this action seeking review of the Commissioner's decision. Doc. 1. On January 10, 2011, the Commissioner filed his Answer (Doc. 10) and a Transcript of Proceedings. Doc. 11. On March 11, 2011, Jones filed his Brief on the Merits. Doc. 13. On May 11, 2011, the Commissioner filed his Brief on the Merits. Doc. 15.

## III. Evidence[2]

**A.    Personal and Vocational Evidence**

Jones was born on May 29, 1953, and, at the time of the ALJ's hearing Jones was 56 years old. Tr. 28, 94, 99. He is a high school graduate. Tr. 173. His past work experience

---

[2] Plaintiff has indicated that, although he has mental impairments, it is unnecessary for this Court to consider these impairments. Pl's Brief 6 and Def's Brief 2. Accordingly, Plaintiff's mental impairments and evidence relating thereto will not be discussed or considered as part of this Report and Recommendation.

3

includes work as a laborer, security officer and truck driver.  Tr. 141, 173.  Jones continued to work on and off until 1999.  Tr. 121, 225.

**B.     Medical Evidence**

Jones sustained injuries to his neck and shoulder in 1986 and to his back in 1989.  Tr. 32, 114, 177, 181-185, 225.  In 1991, following these injuries, R. Gittinger, M.D., whom the ALJ refers to as Jones's treating physician,[3] completed a report regarding Jones' allowed workers compensation claim for strain right shoulder and side of neck.  Tr. 180.  Dr. Gittinger indicated that Jones had recurrent muscle spasm of cervical and trapezius muscles.  Tr. 180.  Dr. Gittinger stated that Jones could return to work with the following restrictions: "[n]o bending and lifting restrictions greater than 30#.  Assigned to press helper permanently."  Tr. 180.  Dr. Gittinger opined that the work restrictions were permanent.  Tr. 180.

In 1992, independent medical examiner James E. Lundeen Sr., M.D., indicated that Jones had mild atrophy of the scapular musculature in the right shoulder region, range of motion in the right shoulder and neck areas was restricted and hand grasp was reduced on the right.  Tr. 181-182.  Also in 1992, as part of Jones' workers compensation claim and a determination regarding permanent partial impairment in that claim, Paul C. Martin, M.D.[4] completed an "Occupational Medicine Consultation" and noted restricted neck and shoulder motion.  Tr. 183 – 185.

In 1998, Jones sought medical treatment at an emergency room where he complained of nervousness, stomach discomfort, occasional numbness in hands and feet and occasional shortness of breath.  Tr. 212-213.  The emergency room report indicated that Jones' extremities

---

[3] Tr. 12.

[4] Dr Martin's specialty, as noted on the Occupational Medicine Consultation report, is Occupational Medicine.  Tr. 183.

4

showed no swelling or tenderness and that there was a full range of motion with normal strength. Tr. 213.

In 2005, Jones sought treatment at the EMH Medical Center the morning after he sustained a pulled muscle while bowling. Tr. 194. Jones also complained of right flank pain. Tr. 194. The diagnosis was a possible kidney stone and muscle strain and Jones was released with instructions for follow-up care. Tr. 201-203.

Jones was next examined in October 2007 by a consultative physician, Kimberly Togliatti-Trickett, M.D. Tr. 220-226. A right shoulder x-ray showed a normal right shoulder. Tr. 219. Dr. Togliatti-Trickett's report indicates functional range of motion in the bilateral lower and upper extremities with the exception of the right shoulder. Tr. 226. With respect to the right shoulder, the report indicates limited active range of motion due to complaints of pain in that shoulder with passive range of motions within functional limits. Tr. 226. Dr. Togliatti-Trickett's report notes that Jones is moderately overweight with an obese abdomen. Tr. 226. The report also notes limited lumbar range of motion and mild limitations of the cervical spine range of motion. Tr. 226. Further, the report indicates that Jones had tenderness with palpation in the right upper trapezius region in the mid scapular stabilizers on the right side as well as tenderness in the right lateral flank region. Tr. 226. Dr. Togliatti-Trickett indicated that Jones was "moving all four extremities appropriately with 5/5 strength in all four extremities," and had "normal hand function including grasp, manipulation, pinch and fine coordination bilaterally." Tr. 226. Dr. Togliatti-Trickett noted that Jones was able to walk on his heels, toes, squat and arise without difficulty. TR. 226.

Based on Dr. Togliatti-Trickett's examination, she opined that Jones "should be able to do some work related activities such as sitting, standing, and walking for at least two to three

hours at a time." Tr. 226. Further, she indicated that Jones "has no problems hearing, seeing, speaking, traveling, or handling objects," and "he should be able to lift and carry at least 20 to 30 lbs. on routine basis." TR. 226. Dr. Togliatti-Trickett further opined that Jones should be able to "return back at least at a light physical demand category workload without significant limitations."[5] Tr. 226.

Also, in October 2007, Diane Manos, M.D. completed a Physical Residual Functional Capacity Assessment ("RFC"). Tr. 227-234. Dr. Manos' RFC indicates some exertional limitations for lifting and/or carrying, sitting and standing and/or walking. Tr. 228. The RFC does not indicate any limitations for pushing and/or pulling, except for those associated with lifting and/or carrying. Tr. 228. Postural and manipulative limitations were noted due to range of motion pain of right shoulder and back (postural) and right shoulder (manipulative). Tr. 229. The postural limitations noted were occasional climbing of ladder/rope/scaffolds and stooping. Tr. 229. The manipulative limitation noted was limited reaching in all directions (including overhead). Tr. 230. No visual, communicative or environmental limitations were noted. Tr. 230-231. When asked in the RFC whether there were "treating/examining source conclusions about the claimant's limitations or restrictions which are significantly different from your findings," Dr. Manos indicated "No." Tr. 233. Dr. Manos further stated that the consultative examiner's opinion that the claimant should be able to lift and carry 30 pounds on a routine basis is consistent with the objective MER[6] and reflected in her RFC. Tr. 233.

---

[5] Dr. Togliatti-Trickett opined that Jones' psychological status appeared to be more of a limitation in his ability to return to work, and recommended further neuropsychological testing to determine Jones' true disability and his ability to return to work from a neuropsychological standpoint. Tr. 226. However, as noted earlier, Plaintiff has indicated that his mental impairments are not at issue in this case. Accordingly, these opinions are not relevant to this Report and Recommendation.

[6] SSA - POMS: DI 22505.001 indicates that "MER" is Medical Evidence of Record.

In March 2008, Anton Freihofner, M.D. affirmed Dr. Manos' assessment of October 24, 2007. Tr. 257.

### C. Testimonial Evidence

#### 1. Jones' Testimony

On December 18, 2009, Jones appeared with counsel and testified at the administrative hearing. Tr. 21–52. Jones testified that he suffered injuries in 1986 and 1989 to his back, neck and shoulder. Tr. 32. He testified that the specific injury that caused the bending and lifting restrictions occurred while he was in the dip tank line. Tr. 33. Jones testified that, in 1991, Dr. Givinger [sic] permanently restricted him from bending or lifting. Tr. 31. Jones further testified that he had not seen Dr. Givinger [sic] since 1991 because the doctor had told Jones that the pain would never increase or decrease, that it would be constant. Tr. 31. Jones testified that, based on the 1991 report, he was permanently damaged. Tr. 32.

When asked how the pain was affecting him at the time of the hearing, Jones testified that he could not raise his arm above his head, or reach with his right arm, and that he had numbness and tingling in his fingers. Tr. 34. Jones testified that the pain was in his neck, shoulder and back, and that he occasionally takes over the counter medications for the pain. Tr. 34.

Jones testified to some of his daily activities, which included his ability to perform yard work such as leaf blowing and lawn mowing. Tr. 36-37. However, he also indicated that he has to switch the leaf blower from hand to hand because of numbness, and has to squeeze the handle more tightly with his right hand than his left to avoid dropping the leaf blower.Tr. 37. Jones testified that he is able to put dishes away because the location of where he stores his dishes is below his head. Tr. 38. He testified that he goes shopping with his relatives and takes them

places such as to school and to friends' houses, and he also runs errands alone. Tr. 43-45. Jones also testified that he watches his neighbor's teenagers at times and visits his wife in the nursing home. Tr. 44, 46-47.

### 2. Vocational Expert's Testimony

Carol Mosley, a vocational expert, was present at the administrative hearing on December 18, 2009. Tr. 22. However, no testimony was elicited from Ms. Mosley. Tr. 21-52.

### IV. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment,

8

> claimant is presumed disabled without further inquiry.
>
> 4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy. *Id.*

### V. The ALJ's Decision

In her December 22, 2009 decision, the ALJ found that Jones met the insured status requirement through September 30, 2011. Tr. 11. The ALJ also found that Jones was not engaged in substantial gainful activity since June 1, 1999, the alleged onset date. Tr. 11. The ALJ determined that Jones does have a medically determinable impairment; specifically, right shoulder strain. Tr. 11. However, relying on the consultative examiner's report, the ALJ determined that Jones does not have a severe impairment or combination of impairments. Tr. 11, 13. Accordingly, without further analysis under steps three through five, the ALJ concluded that Jones was not disabled. Tr. 14.

Although the ALJ indicated that she gave weight to Dr. Togliatti-Trickett's opinion, the ALJ did not clearly explain how that opinion led the ALJ to the conclusion of no severe

9

impairment at step two. Moreover, although the ALJ referred to Dr. Gittinger as a treating physician (Tr. 12), she apparently did not give any weight to his opinion (Tr. 13) nor did she explain why no weight was given.

## VI. Law & Analysis

**A.      Standard of review**

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence, or indeed, a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified." *Cole v. Comm'r of Soc Sec.*, No. 09-4309, 2011 U.S. App. LEXIS 19392 *10 (6th Cir. September 22, 2011) (internal quotations omitted). (citing *Blakely v. Comm'r of Soc Sec*, 581 F.3d 399, 407 (6th Cir. 2009)).

B.     **Determining whether an impairment is severe**

Step two of the sequential evaluation - determining whether a claimant has a severe impairment - has been construed as a *de minimis* hurdle for a claimant to meet. *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1985). "Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* "[I]n the vast majority of cases, a disability claim may not be dismissed without consideration of the claimant's individual vocational situation." *Id.* at 863. However, "the severity requirement may still be employed as an administrative convenience to screen out claims that are "totally groundless" solely from a medical standpoint." *Id.*

The Commissioner's regulations state that "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a), 416.921(a). If a claimant does not have any impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities, he will be determined not to have a severe impairment. 20 C.F.R. § 404.1520(c), 416.920(c). Basic work activities include physical as well as mental functions. 20 C.F.R. § 404.1521(b), 416.921(b). Walking, standing, sitting, lifting, pushing, pulling, reaching or handling are physical functions deemed to be "basic work activities." *Id.*

The Commissioner's own rules provide that "[a] determination that an impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairments(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental abitiy(ies) to perform basic work activities." Social Security Ruling 85-28, 1985 SSR

11

LEXIS 19 (Soc. Sec. Admin. 1985). Medical evidence alone is to be evaluated to assess the effects of impairments on the ability to do basic work activities. *Id.* "Great care should be exercised in applying the not severe impairment concept." *Id.* If the effect of an impairment or combination of impairments on the ability of a claimant to do basic work activities cannot be clearly determined, then the sequential evaluation should not end at step two. *Id.* As indicated, while findings of no disability at step two are not prohibited, determinations at this step are reserved for those claims which are "totally groundless" solely from a medical standpoint. *Higgs*, 880 F.2d at 863.

C.   **Evaluating Opinion Evidence**

Regardless of its source, every medical opinion received shall be evaluated. 20 C.F.R. §§ 404.1527(d), 416.927(d). Generally, more weight is given to examining sources than non-examining sources, and generally more weight is given to treating sources. *Id.* "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The Commissioner's regulations impose a clear duty always to give good reasons in its notices of determinations or decisions for the weight given to treating source opinions. *Cole*, No. 09-4309, 2011 U.S. App. LEXIS 19392 *11; 20 C.F.R. § § 404.1527(d)(2), 416.927(d)(2). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, No. 09-4309, 2011

12

U.S. App. LEXIS 19392 *11 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996)) (internal quotations omitted).

Where a treating source's opinion is not provided controlling weight, certain factors must be applied by the ALJ to determine what weight should be given to the treating source's opinion. *Bowen v. Comm'r of Soc Sec.*, 478 F.3d 742, 747 (6th Cir. 2007). The factors to be considered are: (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors which tend to support or contradict the opinion. *Bowen*, 478 F.3d at 747; 20 C.F.R. §§ 404.1527(d), 416.927(d). Further, where a treating source's opinion is not given controlling weight, the ALJ must explain the weight given to opinions of a State agency medical or psychological consultant or other program physician, psychologist or other medical specialist. 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).

Inasmuch as 20 C.F.R. § 404.1527(d)(2) creates important procedural protections for claimants, failure to follow the procedural rules for evaluation of treating physician opinions will not be considered harmless error simply because a claimant may appear to have had little chance of success on the merits. *Wilson*, 378 F.3d at 546-547.

### 1. Who is a treating source?

A "treating source" is a physician, psychologist or other acceptable medical source that has provided medical treatment and has an ongoing treatment relationship. 20 CFR §§ 404.1502, 416.902. If a treating source has only treated or evaluated a patient a few times or only after long intervals, the physician may nevertheless be considered a treating source if the nature and frequency of the treatment or evaluation is typical for the condition. *Id.*

**D. Because the ALJ failed to properly follow the rules and regulations regarding evaluation of medical opinion evidence, there is a lack of substantial evidence to support the ALJ's decision**

**1. Treating source**

An ALJ's failure to identify the reasons for discounting a treating source's opinion and failure to explain precisely how those reasons affected the weight given to the treating source's opinion signifies a lack of substantial evidence. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d at 407. This holds true even where the conclusion of the ALJ may be justified based upon the record. *Id.*

The ALJ refers to Dr. Gittinger as Jones' treating physician. Tr. 12. However, it is not clear whether the ALJ considered Dr. Gittinger to be a treating source under 20 C.F.R. §§ 404.1502 and 416.902.

The ALJ did give weight to Dr. Togliatti-Trickett's consultative report. report. Tr. 13. The ALJ's decision to provide weight to this report was based, in part,[7] on the ALJ's determination that there was an absence of treating physician records to contradict Dr. Togliatti-Trickett's opinion. Tr. 13. The ALJ did not explain the apparent contradiction between her reference to Dr. Gittinger as a treating physician and her comment about the absence of treating physician records.

Since Dr. Gittinger's 1991 report indicates that Jones had permanent restrictions associated with a "strain right shoulder and side of neck," (Tr. 180), his opinion, if entitled to controlling weight, might change the evaluation at step two of the five-step sequential evaluation. Because Dr. Gittinger last treated Jones in 1991, it may well be that he should not be

---

[7] The ALJ's decision to give weight to Dr. Togliatti-Trickett's opinion was also dependent upon the fact that Dr. Togliatti-Trickett's opinion was based on an actual examination of Jones. Tr. 13.

14

considered a treating source, or that his opinions should not be considered substantial evidence.[8] However, the ALJ did not provide reasons for disregarding Dr. Gittinger's opinion, which the ALJ was required to do by the applicable rules and regulations, and this Court cannot guess as to the ALJ's reasoning. If, after a thorough analysis by the ALJ, a determination is made that Dr. Gittinger is not a treating source, then the 1991 report would not be entitled to controlling weight. However, even if controlling weight is not given to Dr. Gittinger's report, consideration of his medical opinion is still required. 20 C.F.R. §§ 404.1527(d), 416.927(d).

Because the ALJ's decision is unclear and it cannot be determined from the record whether or not the ALJ considered Dr. Gittinger to be a treating source, the failure of the ALJ in this instance is not harmless error. Accordingly, remand is recommended so that a full and complete analysis of whether Dr. Gittinger is a treating source and the weight, if any, to be accorded Dr. Gittinger's report may be conducted consistent with 20 C.F.R. §§, 404.1502, 404.1527 and 416.902, 416.927.

### 2. State Agency reviewing physician

Jones specifically asserts that, contrary to 20 C.F.R. § 404.1527, the ALJ failed to mention Dr. Manos' opinion, and therefore, the ALJ erred. Notwithstanding this assertion, a review of the ALJ's decision indicates that the ALJ did briefly mention Dr. Manos' report. Tr. 13. However, the decision does not include a discussion of what, if any, weight she gave to Dr. Manos' report. As previously indicated, the ALJ did not clearly articulate the weight, if any, given to Dr. Gittinger's opinion.

---

[8] *Ingham v. Soc Sec Comm'r*, 2010 U.S. Dist. LEXIS 45357, *9 (C.D. CA 2010) (citing *Carmickle v. Soc Sec Comm'r*, 533 F.3d 1155 (9th Cir. 2008) (finding that medical opinions which predate the alleged onset of disability are not considered substantial evidence).

Where a treating source's opinion is not given controlling weight, the ALJ must explain the weight given to opinions of a State agency medical or psychological consultant or other program physician, psychologist or other medical specialist.  20 C.F.R. § § 404.1527(f)(2)(ii), 416.927(f)(2)(ii).  As such, the ALJ's brief mention of Dr. Manos' opinion is not consistent with the requirements of 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii).  Accordingly, remand is recommended so that a full and complete analysis of the weight to be accorded Dr. Manos' report may be conducted consistent with 20 C.F.R. §§ 404.1527 and 416.927.

### 3. Consultative Examiner

The ALJ gave weight to Dr. Togliatti-Trickett's opinion and in so doing concluded that Jones's shoulder impairment, although it may have been severe at the time of the injury, is no longer severe.  Tr. 13.  Dr. Togliatti-Trickett's consultative examiner report, however, did include a description of some limitations on Jones's range of motion and some work-related restrictions, and the ALJ did not explain why those limitations do not amount to a severe impairment.

The ALJ gave weight to Dr. Togliatti-Trickett's report in part due to the absence of treating physician records to contradict it (Tr. 13), yet the ALJ did not explain the apparent contradiction between that statement and the ALJ's reference to Dr. Gittinger as Jones' treating physician (Tr. 12).  Further, the ALJ did not explain whether and why Dr. Gittinger's report is or is not entitled to controlling weight.

Accordingly, remand is recommended so that a clear explanation of the ALJ's analysis of the medical opinions can be provided consistent with 20 C.F.R. §§ 404.1527 and   416.927.

**E.      The ALJ did consider evidence indicating Jones to be obese**

Jones argues that this matter should be remanded because the ALJ's decision provides no consideration as to whether Jones' obesity, alone or in combination with his other problems, was a severe impairment.  Pl's Brief 9.

Although the ALJ's decision does not contain a lengthy discussion regarding the medical evidence indicating that Jones has an obese abdomen, it does take the evidence of his obesity into account in its analysis.  Specifically, the ALJ states, "[i]ncorporating the claimant's moderate obesity, the examiner concluded that the claimant could lift and carry at least 20-30 pounds on a routine basis, and could perform physical work activities."  Tr. 13.  Accordingly, the record does not support a finding that the ALJ failed to evaluate Jones' obesity alone, or in combination with his other problems.

## VI.  Conclusion and Recommendation

For the foregoing reasons, it is recommended that the ALJ's decision be REVERSED and that this matter be REMANDED for further proceedings consistent with this Report and Recommendation.

Dated: November 2, 2011

Kathleen B. Burke
United States Magistrate Judge

### **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).